# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RAFAEL CARDONA, | ) |
| Claimant, | ) No. 14-cv-5380 |
| v. | ) Jeffrey T. Gilbert <br> ) Magistrate Judge |
| CAROLYN W. COLVIN, Acting <br> Commissioner of Social Security, | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Claimant Rafael Cardona ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 10.] Claimant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. [ECF No. 15.] The Commissioner has done likewise. [ECF No. 22.] For the reasons stated below, Claimant's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted. The decision of the Commissioner is affirmed.

## I. PROCEDURAL HISTORY

On June 15, 2010, Claimant filed an application for DIB, alleging a disability onset date of September 11, 2004. (R. 217.) The claim was denied initially on August 12, 2010, and upon reconsideration on October 12, 2010. (R. 87, 97.) On November 2, 2010, Claimant requested a hearing before an Administrative Law Judge ("the ALJ"). (R. 98.) The requested hearing was

then held on May 11, 2012. (R. 56-84.) At that hearing, Claimant, who was represented by counsel, appeared by video and testified. *Id.* A vocational expert ("the VE") also appeared and testified. *Id.*

On December 28, 2012, the ALJ issued a written decision. (R. 36-48.) In the decision, the ALJ went through the five-step sequential evaluation process and ultimately found Claimant not disabled under the Act. (R. 36.) At step one, the ALJ found Claimant had not engaged in substantial gainful activity ("SGA") from his alleged onset date through his date last insured. (R. 38.) At step two, the ALJ found Claimant had the severe impairments of status post lumbar spine surgery, myofascial pain syndrome, and depression. *Id.* At step three, the ALJ found Claimant did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (R. 39.)

Before step four, the ALJ found Claimant had the residual functional capacity ("RFC") to do light work. (R. 40.) The ALJ determined that Claimant could do no more than simple, routine, repetitive tasks that did not have fast-paced production requirements such as those found on an assembly line. *Id.* The ALJ further limited Claimant to work that with no more than occasional balancing, stooping, kneeling, crouching, crawling, climbing of stairs and ramps, and reaching bilaterally above shoulder level. *Id.* Finally, the ALJ precluded all work that involved climbing ladders, ropes, or scaffolds; working around hazardous machinery with moving mechanical parts; or working in high, exposed places. Based on this RFC, the ALJ determined at step four that Claimant could not perform any past relevant work. (R. 46.) Finally, at step five, the ALJ found there were jobs that existed in significant numbers in the national economy that

2

Claimant could perform. *Id.* Specifically, the ALJ found Claimant could work as an assembler, an inspector, and a hand packer. (R. 47.)

Because of this determination, the ALJ found that Claimant was not disabled under the Act. *Id.* On December 28, 2012, Claimant sought review of the ALJ's decision. *See* R. 23. On March 24, 2014, the Social Security Appeals Council denied the request. *Id.* That denial made the ALJ's opinion into the final decision of the Commissioner. *Id. See also Nelms*, 553 F.3d at 1097. Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel,* 530 U.S. 103, 106-07 (2000). A claimant then may seek review of this final decision in the district court. *Id.* Judicial review is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the district court will not uphold the ALJ's findings if the ALJ did not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). In other

words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). Though the substantial evidence standard is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue,* 534 F.3d 663, 665 (7th Cir. 2008). The court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence . . . ." *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

## III. ANALYSIS

This is a rare one-issue social security case. The only argument Claimant raises is that the ALJ erred by failing to seek the enforcement of a subpoena.[1] At the hearing, Claimant's attorney explained that he tried to obtain medical records from Claimant's treating psychiatrist, Dr Maria El Fisfalen. (R. 61.) But Dr. Fisfalen "insist[ed]" she only had to provide them if the SSA issued a subpoena. (R. 61.) After the attorney provided this information, the ALJ said he would try to get Dr. Fisfalen's records. (R. 62.) And the ALJ did issue a subpoena, which demanded production of "[a]ll medical records for [Claimant] from March 2011 to present, and any other evidence in your possession relating to the above matter." (R. 42, 214-216.) But Dr. Fisfalen did not comply with the subpoena. (R. 42.)

**1.  Both Parties Misstate The Relevant Standard For This Appeal.**

It should be noted as a preliminary matter that the Commissioner, and therefore an ALJ, has the power to seek the enforcement of a subpoena. Under 42 U.S.C § 405(d), the Commissioner can issue a subpoena that requires the production of evidence for a social security hearing. 42 U.S.C § 405(d). If a person served with a subpoena fails to comply, the

---

[1] Claimant also asserts in his reply brief that the ALJ committed error by playing doctor when determining Claimant's mental RFC. [ECF No. 24, at 3-4.] Because this argument was not raised until the reply brief, it was waived. *United States v. Hughes,* 970 F.2d 227, 235 (7th Cir. 1992).

Commissioner can apply to the district court for an order requiring the refusing person to "appear and produce evidence." 42 U.S.C § 405(e).

In this case, the ALJ issued a subpoena. That means the ALJ determined Dr. Fisfalen's records were "reasonably necessary for the full presentation of a case." 20 C.F.R. § 404.950(d)(1). Both parties rely on the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") in assessing the propriety of the ALJ's subsequent inaction with respect to the subpoena. Although the Seventh Circuit has not decided yet whether HALLEX creates enforceable rights for claimants, "[c]ourts may look to the HALLEX as a guide for procedural rules in Social Security DIB cases." *DiRosa v. Astrue*, 2012 WL 2885112, at *5 (N.D. Ill. July 13, 2012). According to HALLEX, when Dr. Fisfalen failed to comply with the subpoena, the ALJ was required to "consider any changes in the situation since the subpoena was first issued and again determine whether the evidence or facts requested [were] reasonably necessary for the full presentation of the case." HALLEX I-2-5-82, 1994 WL 637399, at *1.

Claimant contends that, under this provision, an ALJ can decide not to enforce a subpoena only when there is a change in circumstances that makes the subpoena unnecessary for a full presentation of the case. [ECF No. 24, at 2-3.] That is not what the provision means. Instead, an ALJ is required to *consider* any changes. Then, the ALJ must "again determine" whether it is necessary to enforce the subpoena. In making that determination, the ALJ should consider all the facts and circumstances, including those that have not changed. A contrary understanding is not supported by the text of HALLEX. Moreover, Claimant's interpretation would effectively render irrelevant the requirement to "again determine" necessity because, in many cases, nothing may change between the issuance of and noncompliance with a subpoena.

5

Simply put, an ALJ's decision to enforce (or not enforce) a subpoena should not be based solely on what has changed since that issuance of the subpoena.

The Commissioner argues that the ALJ's decision not to seek enforcement of the subpoena should be reviewed under an abuse of discretion standard. [ECF No. 23, at 3.] In support, the Commissioner cites a Seventh Circuit case called *Butera v. Apfel*, 173 F.3d 1049 (7th Cir. 1999). In *Butera*, the claimant argued the ALJ erred by denying his request to subpoena two reviewing physicians to testify. *Id.* at 1057. The court rejected this contention and, in doing so, quoted an opinion from the Ninth Circuit, which stated, "The ALJ has discretion to decide when cross-examination is warranted." *Id.* at 1058 (quoting *Copeland v. Bowen*, 861 F.3d 536, 539 (9th Cir. 1988)).

Although not cited by the Commissioner, there is case law from other circuits that more directly addresses this issue. The Second Circuit has recognized that the "plain language" of the regulation pertaining to the issuance of subpoenas "clearly places the decision to issue a subpoena within the sound discretion of the ALJ." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). The Sixth Circuit has reached the same conclusion. *Id.* at 112-113. This rule has been extended to the enforcement of a subpoena as well. *Bennett v. Colvin*, 2016 WL 308777, at *5 (N.D. Ohio Jan. 26, 2016), *judgment entered*, 2016 WL 320822 (N.D. Ohio Jan. 26, 2016); *Serrano v. Barnhart*, 2005 WL 3018256, at *4 (S.D.N.Y. Nov. 10, 2005).

Therefore, there clearly is some support for the Commissioner's argument about what standard governs an ALJ's decision to enforce a subpoena. Claimant has failed to identify any jurisprudence applying a different standard. This Court, however, need not now resolve this issue. That is because Claimant is not arguing the failure to enforce the subpoena was error in-and-of-itself. Instead, Claimant is asserting that, because of the failure, the ALJ "failed to fulfill

her duty to develop the record." [ECF No. 15, at 1; ECF No. 24, at 2.] There is a well-developed body of case law in this circuit that governs such a contention.

An ALJ has a duty to develop a full and fair record. *Martin v. Astrue*, 345 F. App'x 197, 201 (7th Cir. 2009). Because of this duty, an ALJ must ensure that the record contains at least enough information to assess a claimant's RFC and make a disability determination. *Id.* "Failure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence." *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). But courts generally uphold the Commissioner's judgment about how much evidence to gather. *Nelms*, 553 F.3d at 1099. A remand is only appropriate where an ALJ's decision not to gather evidence either prejudiced the claimant or left an evidentiary gap. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). A claimant must identify what specific, relevant facts an ALJ failed to consider. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1143 (N.D. Ill. 2012). And the resulting prejudice or gap generally must be significant. *Giebudowski v. Colvin*, 981 F. Supp. 2d 765, 775 (N.D. Ill. 2013). Considering all of these rules together, an ALJ must "seek out records of known treatments where the absence of those records is significant and could be prejudicial." *Giebudowski v. Colvin*, 981 F. Supp. 2d 765, 775 (N.D. Ill. 2013).

In this case, Claimant contends that the record was insufficiently developed with respect to his depression and its effect on his back pain. As explained below, the Court finds otherwise.

### 2. Claimant's Depression Did Not Independently Limit His Ability to Work.

The ALJ had significant evidence in the record that Claimant's depression did not independently limit his ability to work. As noted by the ALJ, Claimant did not list depression when applying for benefits, requesting reconsideration of the initial denial, or requesting a hearing. Even at the hearing, Claimant only testified that his depression made him feel "sad"

7

because he cannot do anything and he has family problems. (R. 63.) Claimant has not identified any evidence in the record showing that his depression independently limited his ability to work. In fact, Claimant has not even argued that his depression independently limited his ability to work.

3. **The Record Was Sufficient To Determine The Limiting Effects of Claimant's Back Pain, As Affected By His Depression.**

Claimant's only meaningful argument is that his depression made his back pain worse. Claimant does not explain, however, why there was insufficient evidence in the record to determine the limiting effects of his back pain (regardless of its cause.) That is a crucial hole in Claimant's case on appeal.

The ALJ weighed two medical opinions. The first was given in a 2005 Functional Capacity Evaluation report ("FCE"). (R. 46.) The FCE indicated Claimant could perform the Light-Medium and Medium work levels, as defined by the United States Department of Labor (which uses different definitions than the Social Security Administration). (R. 513.) The specific test results reported in the FCE revealed greater physical abilities than those contained in the RFC. (R. 512-516.) The ALJ gave the FCE considerable weight. (R. 46.) Claimant has not argued that determination was improper.

The second medical opinion was provided by Dr. Charles Carlton, who performed a medical examination in 2010. During the examination, Claimant apprised Dr. Carlton of his back pain. (R. 416, 417.) After performing a battery of tests, Dr. Carlton concluded that Claimant had a "full painless range of motion in all joints except the hips" and had only "some decreased range of motion noted at the lumbar spine." (R. 418.) Claimant could walk more than fifty feet without an assistive device, although his gait was somewhat slow and rigid, and was able to rise from a seated position without assistance. (R. 417.) Claimant did have some

8

difficulty going into a squatting position "due to reports of chronic low back pain." (R. 419.) The doctor noted that Claimant had no "obvious signs of depression." (R. 418.) Dr. Carlton made many additional detailed findings with respect to Claimant's physical abilities. (R. 420-424.) Ultimately, Dr. Carlton opined that, even under a "conservative estimate," Claimant could sit and stand; walk greater than fifty feet without an assistive device; safely lift, carry and handle objects using both hands; and safely perform tasks that involve lifting up to 20 lbs. from waist level and above. (R. 419.) The ALJ gave this opinion great weight (R. 46), and, again, Claimant has not challenged this determination.

The ALJ discussed many other objective medical findings that evidenced Claimant's physical abilities. In 2006, 2007, and 2008, examinations at Mount Sinai Medical Center revealed normal ranges of motion and normal strength and tone. (R. 42-43, 345, 349, 359.) Another examination through Mount Sinai Medical Group revealed that, even though Claimant's back pain somewhat limited the tests, Claimant had full motor strength. (R. 393.) During 2010 and 2011, Dr. Edward Park noted Claimant was in some pain and sometimes reported limited ranges of motion. *See, e.g.,* R. 439, 440. But he also routinely reported Claimant had 4 or 5 out of 5 in muscle strong, normal ranges of motion, and other findings consistent with the RFC. (R. 445, 448, 451.) Simply put, these examinations did not reveal limitations in Claimant's ability greater than was imposed by the RFC.

Claimant has failed to identify what specific limitations in the RFC are insufficient to account for his impairments. He has failed to identify any significant evidence showing that he had more limited abilities.[2] And he has failed to explain why the above-discussed medical opinions and findings are insufficient evidence to determine his physical ability to work.

---

[2] The Court will note that there is some such evidence in the record. However, it is not substantial evidence when considering the record as a whole, including the two medical opinions discussed above.

Claimant makes general assertions that the ALJ could not "fully appreciate the objective medical evidence" without Dr. Fisfalen's records. [ECF No. 15, at 8.] But this contention is never developed or supported to a meaningful extent. Therefore, the Court finds there was not a significant, prejudicial omission from the record related to the limiting effect of Claimant's back pain. Rather, the ALJ had sufficient, substantial evidence to adequately assess what impairments Claimant had and their limiting effects. *See Stephens v. Colvin*, 2016 WL 1271050, at *7 (N.D. Ill. Mar. 29, 2016) ("Even if the ALJ were wrong to conclude that the limitations resulted from the separate effects of Claimant's condition rather than their cumulative effect, that error would be harmless if the resulting limitations were correct. . . . The fact that the arthritis was caused by her obesity does not change the nature or extent of her limitation."). That is why the ALJ correctly found the record to be "complete and fully developed in so far as the claimant's only alleged disabling impairment – back pain . . . ." (R. 42.)

4. **The Record Was Sufficient To Assess Claimant's Testimony.**

Claimant's last point is that the ALJ's credibility analysis was flawed because of the absence of Dr. Fisfalen's records. In assessing Claimant's testimony, the ALJ discussed Claimant's daily activities, repeated failure to follow his doctors' recommendations with respect to pain mitigation, and minimal pain medication. (R. 44-45.) The ALJ also noted that "[p]erhaps the most significant information in the record concerning credibility is the treating pain specialist's findings on tests designed to elucidate symptom magnification and the determination of non-organic causes of pain with atypical findings." (R. 45-46.) With respect to this last finding, the ALJ properly characterized Dr. Park's finding. R. 443, 452. Based on all these factors, the ALJ found Claimant's testimony about the extent and effect of his pain to not accurately represent the actual limiting effects of his pain.

10

Claimant does not dispute how the ALJ handled most of these matters. He does not raise any issue with the ALJ's handling of Claimant's daily activities, non-compliance, or pain medication. Claimant's argument is very narrow. He asserts the ALJ failed to appreciate that his back pain was caused by his depression and, therefore, that the physical tests might not reveal the full extent of his pain.

This argument has multiple flaws. Fundamentally, it is misguided because, if Claimant were experiencing pain that had no limiting effect, then that pain would not make him disabled. Thus, to the extent Claimant speculates that his pain would not manifest itself in the objective medical tests, he actually harms his own case. Moreover, Claimant essentially attributes a position to the ALJ that he did not hold. The ALJ actually appreciated that Claimant's depression was related to his back pain. The ALJ explicitly found that Claimant's depression "interface[d]" with his pain, and that Claimant's depression "in combination with pain" could limit his ability to work. (R. 39, 42.) The ALJ was not blind to this fact. Instead, the ALJ found that, even taking account of this causal factor, the evidence showed that Claimant's pain was not as great as he claimed and did not have the limiting effects that he claimed. This determination is consistent with the above-discussed substantial evidence.

In summary, the record before the ALJ was fully and fairly developed such that the ALJ could properly assess Claimant's ability to work. The record contained substantial evidence that Claimant was depressed and that his depression impacted his back pain. The record contained substantial evidence regarding the extent of Claimant's back pain. And the record contained substantial evidence regarding Claimant's physical and mental abilities. Therefore, the Court finds that the absence of Dr. Fisfalen's treatment records did not constitute a significant, prejudicial omission.

## IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment [ECF No. 15] is denied, and the Commissioner's motion for summary judgment is granted [ECF No. 22]. The decision of the Commissioner is affirmed. This is a final judgment.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: June 13, 2016